# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ADRIANA PEDROZA,

    Plaintiff,

v.                                                                                                                                        No. 16-cv-0949 SMV

NANCY A. BERRYHILL,[1]
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 23] ("Motion"), filed on February 6, 2017. The Commissioner responded on April 21, 2017. [Doc. 27]. Plaintiff replied on May 19, 2017. [Doc. 28]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 7]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to provide an adequate reason for rejecting the opinion of the consultative examiner in favor of the opinions of the non-examiners. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981. The Tenth Circuit, however, has held that in some situations, a court must consider evidence beyond that which was before the ALJ. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207−08 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Pursuant to 20 C.F.R. § 404.970(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision. If the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision. *O'Dell*, 44 F.3d at 858 (citing 20 C.F.R. § 404.981). Because a court reviews the final decision based on "the record as a whole," it will consider the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council. *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). A court reviews the Commissioner's decision, which is the ALJ's decision and not the Appeals Council's denial of review. *See id.* Considering all of the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Maes*, 522 F.3d at 1096; *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017). Accordingly, here, the Court reviews the ALJ's decision considering the entire record, including the evidence submitted to the Appeals Council. Tr. 2, 5, 852–1124.

2

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

To qualify for disabled widow's benefits under Title II of the Social Security Act, a claimant must be a widow of a deceased wage earner, have attained the age of 50, be unmarried (or meet one of the exceptions at 20 C.F.R. § 404.335(c)(3)), and be under a "disability" as defined by the Act no later than seven years after the wage earner's death or seven years after she was last entitled to Survivor's Benefits. *See* 20 C.F.R. § 404.335.

To show "disability" under the Act, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at

least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**Procedural Background**

Plaintiff applied for disabled widow's benefits on November 27, 2012. Tr. 26. She alleged a disability-onset date of December 23, 2011. *Id.* Her claim was denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ Ann Farris held a hearing on September 4, 2014, in Albuquerque, New Mexico. *Id.*, Tr. 41−70. Plaintiff appeared in person and was represented by an attorney. Tr. 26, 41–70. The ALJ heard testimony from Plaintiff, through a Spanish language interpreter, and an impartial vocational expert, Nicole B. King. Tr. 26, 41–70.

The ALJ issued her unfavorable decision on January 20, 2015. Tr. 35. She found that Plaintiff met the non-disability requirements for disabled widow's benefits and that her prescribed period ended on June 30, 2015. Tr. 28. At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of her alleged disability. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

proceeded to step two. *Id.* There she found that Plaintiff suffered from one severe impairment: fibromyalgia. *Id.* Further she found that: "[Plaintiff]'s medically determinable mental impairments of depression, conversion disorder; histrionic and narcissistic traits, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities and are therefore non-severe." Tr. 29 .

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 30. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 30–34. The ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) the claimant can lift up to 20 pounds occasionally; lift or carry up to 10 pounds frequently in light work as defined by the regulations; she can stand or walk for approximately 6 hours per 8 hour workday and sit for approximately 2 hours per 8 hour work day, with normal breaks except she is limited to occasional stooping, kneeling and crouching. She is able to frequently reach, handle (use of the whole hand to seize, hold, grasp, and turn) and finger (use of the fingers to pick, pinch, etc.).

Tr. 30. At step four the ALJ found that Plaintiff was able to return to her past relevant work as a waitress. Tr. 34. Therefore, the ALJ did not proceed to step five. Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and she denied the claim. Tr. 34–35. Plaintiff submitted new evidence to the Appeals Council and requested review by the Appeals Council. The Appeals Council made the new evidence part of the record but determined that it did "not provide a basis for changing the

[ALJ]'s decision." Tr. 2. The Appeals Council denied Plaintiff's request for review on June 21, 2016. Tr. 1–6. Plaintiff timely filed the instant action on August 23, 2016. [Doc. 1].

## Analysis

The ALJ's reason for rejecting Dr. Hughson's opinion is inadequate. In part, it is not supported by substantial evidence and, in part, is a non sequitur. Moreover, the ALJ rejected Dr. Hughson's opinion in favor of non-examining opinions that were themselves confusing and internally inconsistent. With no explanation whatsoever as to why the ALJ adopted the non-examining opinions, the Court cannot discern any legitimate basis for arriving at the RFC assessment. The case will be remanded. The Court declines to address Plaintiff's other alleged errors at this time.

This administrative record contains about six years' worth of treatment records for Plaintiff. There is no dispute that she has long complained of pain in different regions of the body: the back, knees, eyes, feet, one elbow, and headaches. She was diagnosed with fibromyalgia, which the ALJ found to be severe. She has reported symptoms of depression but has attended only two or three counseling appointments. She has taken Cymbalta, but it is not clear whether she took it for depression or for fibromyalgia. Defendant arranged for her to undergo a consultative examination to assess her mental health.

The examination was performed by Paula Hughson, M.D., on February 19, 2017. Dr. Hughson diagnosed conversion disorder;[4] major depressive disorder, recurrent; and histrionic

---

[4] Dr. Hughson's report references the 4th edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), which describes conversion disorder as follows:

6

personality disorder with narcissistic personality traits, and she assessed a GAF score of "50–55 Serious Symptoms and Impairments." Tr. 460. Dr. Hughson assessed a marked limitation in the ability to carry out instructions and moderate limitations in the ability to:

- attend and concentrate,
- work without supervision,
- interact with the public, co-workers, and supervisors, and
- adapt to changes in the workplace.

Tr. 462.

On February 28, 2013, Scott R. Walker, M.D., reviewed the record, including Dr. Hughson's report. Tr. 77–78. Dr. Walker opined that "[a] medically determinable impairment [wa]s present that d[id] not precisely satisfy the diagnostic criteria [of anxiety disorders]," and he found the impairment to be severe. Tr. 77. He discussed Dr. Hughson's report, stating that Plaintiff "[a]ppear[ed] to meet criteria for conversion disorder, including the element of secondary gain. Will not use this [diagnosis] as this requires physical investigation for the alleged complaints." Tr. 78. He concluded that "[e]vidence suggests claimant[']s

---

The essential feature of Conversion Disorder is the presence of symptoms or deficits affecting voluntary motor or sensory function that suggest a neurological or other general medical condition (Criterion A). Psychological factors are judged to be associated with the symptom or deficit, a judgment based on the observation that the initiation or exacerbation of the symptom or deficit is preceded by conflicts or other stressors (Criterion B). The symptoms are not intentionally produced or feigned, as in Factitious Disorder or Malingering (Criterion C). Conversion Disorder is not diagnosed if the symptoms or deficits are fully explained by a neurological or other general medical condition, by the direct effects of a substance, or as a culturally sanctioned behavior or experience (Criterion D). The problem must be clinically significant as evidenced by marked distress; impairment in social, occupational, or other important areas of functioning; or the fact that it warrants medical evaluation (Criterion E). Conversion Disorder is not diagnosed if symptoms are limited to pain or sexual dysfunction, occur exclusively during the course of Somatization Disorder, or are better accounted for by another mental disorder (Criterion F).

Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 492–93 (4th ed. 2000).

functional limitations appear to be physical in nature[,] and her mental impairments appear to be functionally non-severe." *Id.* In other words, Dr. Walker determined that Plaintiff had no functional limitation related to any mental illness. Then, on September 13, 2013, Donald K. Gucker, Ph.D., reviewed the record, including Dr. Hughson's and Dr. Walker's reports. Tr. 92. Without any explanation, Dr. Gucker "affirmed" Dr. Walker's report, thereby agreeing that Plaintiff had no mental functional limitation. *Id.*

After holding a hearing, the ALJ considered the entire record. Tr. 26 ("After careful consideration of all the evidence, . . ."). She rejected Dr. Hughson's opinion in favor of the non-examining opinions.[5] Tr. 30, 33. Explicitly relying on the non-examining opinions, the ALJ found that Plaintiff had no severe mental impairment at step two. Apparently relying on Dr. Hughson's opinion, the ALJ agreed that Plaintiff suffered from depression, conversion disorder, and "histrionic traits." However, she found that those impairments, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. Tr. 29. She included no mental functional limitation in the RFC assessment. Tr. 30.

The ALJ explained that she found Dr. Hughson's opinion "less persuasive" because it "contrast[ed] sharply with the other evidence of record and testimony as to [Plaintiff]'s limitations in concentration, social interaction and adaptation[.]" *Id.* This was the only reason she provided for rejecting Dr. Hughson's opinion and adopting the non-examining opinions. She offered no other reason. *See* Tr. 26–34.

---

[5] The ALJ did not explicitly state what weight she gave Dr. Hughson's opinion. Tr. 30. However, she found no mental functional limitation, which amounts to a rejection.

8

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each opinion and why. *Id.* "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 404.1527(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

In weighing medical opinions, the ALJ generally should accord more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined her. § 404.1527(c)(1); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

If the ALJ intends to reject the opinion of on a consultative examiner in favor of the non-examining physicians, she must provide a legally sufficient explanation for doing so.

ALJs must consider and weigh opinions of non-treating physicians based on the applicable regulatory factors. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

> (i) *Length of the treatment relationship and the frequency of examination.* Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.
> (ii) *Nature and extent of the treatment relationship.* Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.
> (3) *Supportability.* The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) *Consistency.* Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
(5) *Specialization.* We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
(6) *Other factors.* When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

§ 404.1527(c). "[T]o the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. § [404.1527(c)]."). *Reveteriano v. Astrue*, 490 F. App'x 945, 947 (10th Cir. 2012); *see Sisom v. Colvin*, 512 F. App'x 762, 766–67 (10th Cir. 2013) (reversing where ALJ failed to provide a legally sufficient explanation for adopting the non-examining opinions over an examining opinion).

Here, Plaintiff challenges the ALJ's rejection of Dr. Hughson's opinion in favor of the non-examining opinions where the ALJ failed to explain obvious and confounding inconsistencies within the non-examining opinions themselves. For example, (1) the non-examining reports indicate both that Plaintiff's anxiety was severe and also that she had no severe mental impairment. Tr. 77–78, 92–93. (2) The non-examining reports conceded that Dr. Hughson's opinion was "based on current objective evidence and consistent with evidence in file." Tr. 79, 94. The non-examining reports indicated, therefore, that Dr. Hughson's opinion

11

was accorded great weight. *Id.* However, the non-examining sources ignored Dr. Hughson's functional restrictions without explanation. Tr. 72–83, 85–96. (3) The non-examining reports indicate that the record contained no RFC assessment, when in fact, Dr. Hughson had provided a specific opinion as to Plaintiff's mental RFC. Tr. 94, 462. The ALJ's adoption of the non-examining opinions without explaining these inconsistencies contravenes her duty to explain the weight she gives to each medical opinion, SSR 96-6p, and to explain the rejection of any medical opinion, SSR 96-8p, [Doc. 23] at 1–11, [Doc. 28] at 2–3.

Defendant concedes the inconsistencies within the non-examining opinions. [Doc. 27] at 10–11 n.3. However, she argues that the non-examining doctors stated in their *conclusions* that Plaintiff's mental impairments were non-severe, Tr. 78, 92, and therefore, the ALJ reasonably relied on those conclusions, Tr. 30. Defendant argues that the ALJ was correct in finding that Dr. Hughson's opinion contrasted sharply with the other evidence of record and with testimony as to Plaintiff's concentration, social interaction, and adaptation. [Doc. 27] at 10. As evidence to support this finding, Defendant points out that Plaintiff testified that she never sought ongoing specialized mental health treatment. Defendant also points to the non-examining opinions, which of course, state that Plaintiff has no mental functional limitation. *Id.* The Court is not persuaded.

It is true that Plaintiff did not seek ongoing mental health treatment and that the non-examining doctors assessed no mental functional limitation (which contrasted with the several limitations found by Dr. Hughson). But this does not amount to substantial evidence to support a finding that Dr. Hughson's opinion "contrast[ed] sharply with the other evidence of

record." True, Dr. Hughson's assessed limitations contrasted sharply with the non-examining doctors' assessment of zero mental limitations. But that is the extent of the contrast. The other evidence of record does not sharply contrast with Dr. Hughson's opinion. The only contrast is that Dr. Hughson assessed certain limitations and the non-examiners assessed none. That Dr. Hughson's opinion contrasts the non-examiners' opinions provides virtually no support to find that Dr. Hughson's opinion is inconsistent with the record. Although consistency with the record is one of the statutory factors that ALJs should apply in weighing medical opinions, the finding must be supported by substantial evidence. Here, it is not.

Next, the ALJ rejected Dr. Hughson's opinion because she found that it sharply contrasted with the testimony on Plaintiff's limitations in concentration, social interaction, and adaptation. Tr. 30. This, too, addresses one of the regulatory factors that ALJs should consider in weighing medical opinions. However, under the circumstances of this particular case, the ALJ's finding cannot support a rejection of Dr. Hughson's opinion. The only testimony on this subject was provided by Plaintiff, her adult daughter, and her friend. The ALJ found all three women less than credible. Tr. 32–34. The Court struggles to follow how it would make sense to reject Dr. Hughson's opinion on the ground that it contrasts with the testimony of witnesses who are less than credible.

The Court agrees with Plaintiff that the ALJ's reason for rejecting Dr. Hughson's opinion is not adequate. This is underscored by the fact that the ALJ offers no reason why she adopted the non-examining opinions instead, Tr. 29–30, 33, opinions that are confoundingly internally inconsistent. Remand is necessary.

**Conclusion**

The ALJ's reason for rejecting Dr. Hughson's opinion is inadequate. Moreover, the ALJ rejected Dr. Hughson's opinion in favor of non-examining opinions that were themselves confusing and internally inconsistent. With no explanation whatsoever as to why the ALJ adopted the non-examining opinions, the Court cannot follow any legitimate basis for arriving at the RFC assessment. Remand is required.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 23] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**